UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN S.,[1] | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) No. 1:21-cv-02543-MG-TWP |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| *Defendant.* | ) |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

On January 17, 2019, Plaintiff John S. applied for disability insurance benefits ("DIB") from the Social Security Administration ("SSA"), alleging a disability onset date of January 16, 2019. [Filing No. 8-5 at 2-3; Filing No. 8-6 at 2-4.] His application was initially denied on May 8, 2019, [Filing No. 8-3 at 2-12; Filing No. 8-4 at 2-5], and upon reconsideration on August 12, 2019, [Filing No. 8-3 at 13-23; Filing No. 8-4 at 10-12]. Administrative Law Judge Livia Morales (the "ALJ") conducted a hearing on February 4, 2021. [Filing No. 8-2 at 44-88.] The ALJ issued a decision on February 24, 2021, concluding that John S. was not entitled to receive benefits. [Filing No. 8-2 at 8-32.] The Appeals Council denied review on July 26, 2021. [Filing No. 8-2 at 2-7.] On September 29, 2021, John S. filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [Filing No. 14.] For the reasons set forth below, the Court **REVERSES** the ALJ's decision denying John S. benefits and **REMANDS** for further proceedings.

# I.
## STANDARD OF REVIEW[2]

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." Biestek v. Berryhill, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." Stephens v. Berryhill, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. Id. For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" Zoch v. Saul, 981 F.3d 597, 601 (7th Cir. 2020) (quoting Biestek, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." Stephens, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" Zoch, 981 F.3d at 601 (quoting Summers v. Berryhill, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built

---

[2] The regulations governing disability determinations for DIB under Title II and SSI under Title XVI are identical in virtually all relevant respects unless otherwise noted.

an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(a)(4)(iv), (v). The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's

3

decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

John S. was 55 years old on the date of his alleged onset of disability and has a four-year college degree and an additional advanced certification in the subject area of employee benefits. [*See* Filing No. 8-2 at 15.] He has past relevant work as a senior benefits analyst, an employee benefits manager, a benefits specialist, a teacher's assistant, an insurance agent, and a retail manager. [Filing No. 8-2 at 26.] John S.'s original application alleges that he can no longer work because he suffers from ongoing gastrointestinal problems, including bloating, abdominal pain, nausea, abnormal bowel movements, and weakness and lethargy.[3] [Filing No. 8-6 at 6.]

The ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520(a)(4) and concluded that John S. was not disabled. Specifically, the ALJ found as follows:

- At Step One, John. had not engaged in substantial gainful activity since January 16, 2019—*i.e.*, his alleged onset date. [Filing No. 8-2 at 13.]

- At Step Two, John S. had the following severe impairments: "irritable bowel syndrome and gastrointestinal disorder." [Filing No. 8-2 at 13.] As part of this finding, the ALJ summarized treatment records relating to John S.'s mental health but found that "claimant's medically determinable impairments of a history of Major Depressive

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

Disorder, in Remission; Generalized Anxiety Disorder; and a history of Alcohol Use Disorder, in Remission; considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe." [Filing No. 8-2 at 15.]

- At Step Three, John S. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments—specifically Listing 5.06 (inflammatory bowel disease). [Filing No. 8-2 at 16.]

- After Step Three but before Step Four, the ALJ determined that John S. had the RFC to perform "light work as defined in 20 CFR 404.1567(b) except he can frequently climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, crouch, and crawl; occasionally work at unprotected heights; would be off task up to 10 percent of the workday due to symptoms or the need to take a restroom break in addition to normal breaks; and he would need to be within close proximity to a restroom, meaning in the same building and on the same floor." [Filing No. 8-2 at 16-17.]

- At Step Four, relying on the testimony of a vocational expert (the "VE"), the ALJ found that John S. was capable of performing his past work as a senior benefits analyst, employee benefit manager, benefit specialist, and insurance agent. [Filing No. 8-2 at 26-27.]

## III.
### DISCUSSION

On appeal, John S. contends that the ALJ erred in evaluating his mental impairments in three ways: (1) by not engaging a psychological expert to evaluate evidence of John S.'s mental impairments; (2) by adopting an RFC that failed to account for his documented mental impairments; and (3) by not providing sufficient explanation for discounting the opinion of one of John S.'s treating doctors, Dr. Spencer Wilson.

**A. The Evaluation of Dr. Wilson's Opinion[4]**

The Court addresses first John S.'s argument regarding the ALJ's treatment of medical opinion evidence. John S. contends that the ALJ did not adequately explain why she rejected the

---

[4] Neither the ALJ nor the Commissioner asserted that Dr. Wilson's completed questionnaire for John S.'s employer is not a "medical opinion" under 20 C.F.R. § 404.1513(a)(2)(ii).

5

opinion of John S.'s treating gastroenterologist, Dr. Wilson, addressing John S.'s ability to concentrate. [Filing No. 16 at 24.] In December 2018 (*i.e.*, prior to John S.'s alleged onset date of January 16, 2019), Dr. Wilson completed a form from John S.'s employer entitled "Medical Inquiry Form in Response to An Accommodation Request." [Filing No. 8-7 at 87.] On the form, Dr. Wilson indicated that he had examined John S. three times—July 7, 2017, September 10, 2018, and December 7, 2018. [Filing No. 8-7 at 87.] Dr. Wilson opined that John S. was, at that time, impaired by "extreme fatigue, GI issues." [Filing No. 8-7 at 87.] In a checklist asking which life activities or bodily functions were impacted, Dr. Wilson checked the boxes for "concentrating," "eating," "learning," "sitting," "sleeping," "thinking," "bowel," and "digestive." [Filing No. 8-7 at 87-88.] In a box in which Dr. Wilson was asked to "describe the limitations or restrictions which prevent the employee from performing the essential functions of their job," Dr. Wilson wrote "Cannot handle sitting for extended periods. Cannot focus or concentrate for extended periods" and noted this was because John S. "has to visit the restroom approx[imately] 7x a day." [Filing No. 8-7 at 88.] He also wrote that John S. was unable to "sit[] in training classes" and "work extended hours." [Filing No. 8-7 at 88.] Dr. Wilson recommended John S.'s employer "restrict working hours to no more than 7 [hours] daily, restrict training class attendance, no sitting for extended periods." [Filing No. 8-7 at 88.]

The ALJ considered the form completed by Dr. Wilson, but ultimately found his opinion unpersuasive, explaining as follows:

> The record contains a Medical Inquiry Form in Response to an Accommodation Request completed by Spencer Wilson, M.D. on December 15, 2018 (see Ex. 5F at 2-4). Dr. Wilson listed the claimant's impairments as "extreme fatigue" and "GI issues." He indicated that the claimant's ability to concentrate, eat, learn, sit, sleep, and think were affected by his impairments. Dr. Wilson opined that the claimant could not handle sitting, focusing, or concentrating for extended periods. He noted that the claimant had to visit the restroom approximately 7 times a day. Dr. Wilson further opined that possible accommodations would include restricting working

6

> hours to no more than 7 hours daily; restricting training class attendance; and no sitting for extended periods. I do not find Dr. Wilson's opinions persuasive as they are not supported by the overall medical record. Furthermore, he only examined the claimant three times in 2018 (Ex. 5F at 2), and all appointments were prior to the alleged onset date.

[Filing No. 8-2 at 25.]

John S. argues that the ALJ's explanation for not crediting Dr. Wilson's opinion was inadequate. [Filing No. 16 at 24.] He says that "the ALJ's undeveloped and merely conclusory pronouncement the opinion was 'not supported by the overall medical record' fails the test of being a minimally logical rationale due to its being wholly perfunctory and lacking sincerity."[5] [Filing No. 16 at 25.] "More significantly," John S. contends, "it is very clearly inaccurate," and he cites medical records from the Mayo Clinic and from his mental health counselors. [Filing No. 16 at 25.] He also says that the ALJ's statement that Dr. Wilson "only examined the claimant three times in 2018" and prior to his alleged onset date in January 2019 "is not a logical reason to dismiss an opinion which … is well-supported by the observations of several other treating clinicians." [Filing No. 16 at 26.]

In response, the Commissioner argues that "the ALJ reasonably found Dr. Wilson's opinion unsupported as to the relevant timeframe because it was rendered prior to [John S.'s] alleged onset date, when [John S.] was still working and thus *per se* not disabled." [Filing No. 17 at 15.] As far as consistency with the medical evidence, the Commissioner argues that "[t]he ALJ was not required to restate all of the ways that the record did not support disability, which she had already discussed." [Filing No. 17 at 15.] The Commissioner also points out that the ALJ expressly discussed earlier in her decision that by November 2020, John S. was having one to two normal

---

[5] The Court does not know what John S. means by a "lack of sincerity" or the relevance of such a statement and will not analyze the ALJ's sincerity or insincerity.

bowel movements per day, not seven times per day, which the Commissioner alleges served as the basis for Dr. Wilson's December 2018. [Filing No. 17 at 16.] Finally, the Commissioner contends that it was reasonable for the ALJ to discount Dr. Wilson's opinion because his examinations of John S. were before the relevant time period and focused on physical examination of his gastrointestinal system, not mental examinations. [Filing No. 17 at 16-17.] The Commissioner says "it is thus entirely unclear what objective basis Dr. Wilson had for his opinion that [John S.] was too fatigued and distracted by bathroom breaks to work a full time job." [Filing No. 17 at 16.]

In reply, John S. reiterates his argument that the ALJ did not sufficiently articulate how Dr. Wilson's opinion was inconsistent with the medical evidence because the ALJ did not cite to specific evidence. Further, he says, "[t]he notion the ALJ cannot consider an opinion issued a month before a claimant alleges [that] he became disabled to be consistent with and supported by clearly consistent clinical observations from a year and two years later is not only illogical, but not supported by any regulation, case law, or policy ruling." [Filing No. 20 at 5-6.]

Because John S. filed for benefits after March 27, 2017, 20 C.F.R. § 416.920c provides the framework for the ALJ's evaluation of medical source opinions. Under this framework, ALJs will evaluate all medical source opinions using the following factors: supportability, consistency, relationship with the claimant, specialization, and any other factors which tend to support or contradict the medical opinion. 20 C.F.R. § 416.920c(c). The opinion of a claimant's treating physician no longer receives controlling weight. 20 C.F.R. § 416.920c(a). "Instead, the most important factors are a medical opinion's supportability and consistency with the evidence in the record." *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022) (internal quotation marks omitted). These are the factors that the ALJ must explicitly discuss, whereas the ALJ need only consider the other factors. 20 C.F.R. § 416.920c(b).

For a medical opinion to be supportable, it must be based on "the objective medical evidence and supporting explanations." 20 C.F.R. § 416.920c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §416.920c(c)(1). Similarly, for an opinion to be consistent, it must be, reductively, consistent with the record. 20 C.F.R. § 416.920c(c)(2). "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

As a preliminary matter, it was appropriate for the ALJ to consider that Dr. Wilson's opinion was rendered prior to the alleged onset date when evaluating its persuasiveness. "Whether medical records or opinions predate the claimant's alleged onset date is something the ALJ can consider, but that fact alone does not render them outdated." *Maria P. v. Kijakazi*, 2022 WL 1523639, at *4 (N.D. Ill. May 13, 2022) (internal quotation marks and citation omitted). It is also true that ALJs are not required to restate the record when it is documented elsewhere in the opinion. *See Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-79 (7th Cir. 2010) (noting that courts read the ALJ's decision as a whole and with common sense); *Emily S. v. Kijakazi*, 2022 WL 354578, at *17 (S.D. Ind. Jan. 12, 2022) ("The ALJ did not cite to the record to support his conclusion but his evaluation of Dr. Piercy's opinion came at the end of the decision. As has been discussed in detail … the ALJ had already developed how mental status examinations … failed to record objective signs of [claimant's] cognitive dysfunction, inability to attend to simple tasks, and hypervigilance.").

The problem here is that the ALJ did not take the final step of connecting the medical evidence to her finding that Dr. Wilson's opinion was not consistent[6] "with the overall medical record" and therefore did not satisfy the articulation requirements set forth in 20 C.F.R. § 404.1520c(c). This Court is prevented from conducting any sort of meaningful review and is confined to the rationale provided by the ALJ. See Scott v. Astrue, 647 F.3d 734, 739 (7th Cir. 2011). The consistency articulation here is insufficient because there not even a generalized gesture to the medical evidence that the ALJ found to be inconsistent. See Tammy M. v. Saul, 2021 WL 2451907, at *8 (S.D. Ind. June 16, 2021) ("[T]he ALJ decision cannot stand under the new regulations when the ALJ finds the opinion not persuasive because it is inconsistent with medical evidence but does not explain why that evidence is inconsistent with the opinion."). The ALJ's explanation also did not address the supportability of Dr. Wilson's opinion, *i.e.*, the objective medical evidence and explanation provided in support of the opinion. See Stevens v. Kijakazi, 2022 WL 1000598, at *7 (E.D. Wis. Apr. 4, 2022) ("The failure to address the supportability of a prior administrative medical finding constitutes legal error.") While it may be true, as the Commissioner notes, that it is "entirely unclear what objective basis Dr. Wilson had for his opinion that [John S.] was too fatigued and distracted by bathroom breaks to work a full time job," [Filing No. 17 at 16], the ALJ is obligated to say that and the Commissioner's lawyer cannot fill the void on appeal. See Tammy M., 2021 WL 2451907, at *8.

---

[6] The ALJ used the term "supported" but by reference to the "overall medical record" it appears that she was addressing the consistency of Dr. Wilson's opinion. See 20 C.F.R. § 404.1520c(c)(2) ("*Consistency*. The more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be."). See also Wachholz v. Kijakazi, 2022 WL 787932 (E.D. Wis. Mar. 15, 2022) ("Supportability addresses the extent to which the medical opinion is explained by the provider and supported by objective findings …. Whereas consistency addresses the extent to which a medical opinion is consistent with the record evidence as a whole.").

In summary, while an ALJ need not address every piece of evidence when evaluating the supportability and consistency, the oversimplified and conclusory statement provided here prevents the Court from being able to conduct a meaningful review. Therefore, remand is required.

### B. Remaining Issues

In this appeal, John S. also contends that the ALJ erred by interpreting his psychological treatment records rather than engaging an expert consultant to do so and that the RFC did not sufficiently capture John S.'s concentration limitations. [Filing No. 16 at 1; Filing No. 16 at 16.] While the Court need not address these issues, the Court notes that ALJs are responsible for making RFC findings, not experts. *See* 20 C.F.R. § 404.1546(c); SSR 96-5, 1996 WL 374183, at *2 (July 2, 1996). And, although the ALJ has a duty to develop a full and fair record, *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009), it is the claimant's burden, not the ALJ's, to prove that he is disabled, *Summers*, 864 F.3d at 527. That is particularly true here where the claimant is represented by counsel. *Id.* Applying these principles, the Court finds no error with the ALJ's development of the record below. Nevertheless, because the Court is remanding because of the dispositive issues identified above, on remand the parties should consider whether expanding the record is warranted to include opinion evidence addressing John S.'s mental impairments.

### IV.
### CONCLUSION

For the reasons detailed above, the Court **REVERSES** the ALJ's decision denying John S. benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4) as detailed above. Final judgment will issue by separate entry.

Date: 9/30/2022

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**

Date: 9/30/2022

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**